IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANNA J. REED,

    Plaintiff,

v.                                                                                                                                                                                                              CV 09-159 BB/CEG

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Danna J. Reed ("Ms. Reed" or "Plaintiff") brought this action seeking judicial review of the denial of an application for disabled widow's benefits and the denial of an application for a period of disability and Title II Disability Insurance Benefits. This matter is before me now on Ms. Reed's "Motion to Reverse and Remand with Supporting Memorandum." See docket no. 12. Because the Commissioner's decision is supported by substantial evidence, the undersigned recommends the motion be denied.

**Standard of Review**

In reviewing the agency's decision, the Court must "'determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotations omitted). "[A] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Id. (internal quotation omitted). The Court must meticulously examine the record to determine

whether substantial evidence supports the Administrative Law Judge's ("ALJ") decision. Id. In conducting such an examination, the Court must take into account anything in the record that "fairly detracts" from the evidence supporting the ALJ's decision. Id. Moreover, "[t]he agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal." Id.

## Applicable Law and Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration employs a "five-step sequential evaluation process to determine disability." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one of the process, the claimant must show that she is not working at a substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). At step two, the claimant must show that she has an impairment, or combination of impairments, that are severe enough to significantly limit her ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c) and 416.920(c). At step three, it is the claimant's burden to show that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement, the claimant is disabled. If it does not, the analysis proceeds to the next step. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC") and consider, in light of this RFC, whether the claimant retains the ability to perform past relevant work. See 20 C.F.R. §§ 404.1520(e) and 416.920(e).

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  See id.; 20 C.F.R. § 404.1545.

The claimant bears the burden of proof throughout the first four steps of the sequential evaluation process.  At step five, however, the "burden shifts to the Secretary to show that the claimant retains the RFC to do other work that exists in the national economy."  Thompson, 987 F.2d at 1487.  "How the ALJ should proceed on step five to make the ultimate determination that the claimant is disabled or not depends on whether the claimant alleges an exertional impairment (strength-related), or non-exertional impairment (pain or mental problems), or both."  Id.

In order to claim as a widow, the claimant must be the surviving spouse of a deceased worker, must have attained the age of 50, must be unmarried (unless an exception applies), and must establish a disability that began before the end of the period prescribed by the Social Security Act.  See 20 C.F.R. § 404.335; AR at 21.  The period prescribed by the Social Security Act ends (a) in the month before the month in which the claimant attains age 60, or if earlier, either (b) seven years after the worker's death[1] or (c) seven years after the widow was last entitled to survivor's benefits.  See id.

## Background

On July 26, 2002, Plaintiff filed a concurrent claim for disabled widow's benefits and Disability Insurance Benefits.  See Administrative Record ("AR") at 20 and 55-57.  In both her applications, Ms. Reed alleged disability beginning December 14, 2001.  Id.  The claims were denied initially on July 31, 2003, and upon reconsideration on February 18, 2004.  Id. at 40-42

---

[1] The ALJ noted that in this case, Ms. Reed's prescribed period began July 2, 2002 – "the date the wage earner died" and therefore, in order to be entitled to a disabled widow's benefits, Plaintiff must establish disability beginning on or before July 31, 2009.  See AR at 21.

and 46-48. After the adverse decisions by the Commissioner of Social Security, Plaintiff requested and was granted a hearing before an ALJ. Id. at 51-52. After an ALJ heard Ms. Reed's case, he issued a partially favorable decision on December 29, 2004, which awarded disability beginning July 13, 2004, the date Plaintiff reached 55 years of age. Id. at 20. Ms. Reed, however, dissatisfied with the decision, filed a request for review with the Appeals Council on the ground that her disability began August 1, 2003. Id. at 20 and 382-384. The Appeals Council, on August 1, 2006, reviewed the case, vacated the prior decision, and remanded the case for further proceedings and a new hearing. Id. at 20 and 387-390. In the Order of Remand, the Appeals Council expressly noted that the entirety of Plaintiff's claim for benefits should be reviewed and specifically questioned the prior decision's (1) finding that Ms. Reed could not perform past relevant work, (2) lack of evidence from a vocational expert, and (3) the lack of discussion with respect to "conflicts in the record regarding the claimant's subjective complaints." Id.

On October 4, 2004, Ms. Reed appeared with an attorney at a hearing before ALJ Joanne S. Birge, which resulted from the Appeals Council's remand. Id. at 675-725. At the hearing, the ALJ took testimony from Ms. Reed, who was 55 years old at the time, and from Cornelius Ford, a vocational expert. Id. On April 25, 2007, the ALJ issued an unfavorable decision denying Ms. Reed's claim. Id. at 20-29. On December 17, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's April 25, 2007 decision the Commissioner's final decision. Id. at 3-6.

In the Commissioner's final decision, the ALJ revealed that Plaintiff was an unmarried widow who had attained the age of 50. Id. at 23. The ALJ found that Plaintiff's deceased spouse was an insured worker who met the insured status requirements of the Social Security

Act through the date of the ALJ's decision.  Id.  The ALJ additionally found that Plaintiff's earnings record established that she met the insured status requirements of the Social Security Act through the date of the ALJ's decision.  Id.

Moving on to step one of the sequential evaluation process, the ALJ found Ms. Reed had not engaged in substantial gainful activity since December 14, 2001, the alleged onset date.  Id.  The ALJ indicated at step two that Ms. Reed suffered from the following severe impairments: degenerative disc disease with stenosis and chronic back and neck pain, very mild non-obstructive coronary artery disease, asthma, and mild chronic obstructive pulmonary disease secondary to continued cigarette smoking.  Id.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 25.  At step four, the ALJ determined that Ms. Reed had the RFC to perform a limited range of light work.  Id.  Specifically, the ALJ found Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk four hours of an eight-hour workday, and sit without restriction, but that she was only able to work overhead occasionally and needed to avoid concentrated exposure to smoke, gas, fumes, and other environmental pollutants.  Id.  The ALJ indicated that Plaintiff was able to perform her past relevant work as a warranty clerk and cashier.  Id. at 27.  In addition, the ALJ found, via the testimony of the vocational expert, that Ms. Reed had work skills from past relevant work that were transferable to other light and sedentary work and that her work-related physical limitations did not significantly erode the occupational base of light work.  Id. at 28.

Even though the ALJ found Ms. Reed could perform her past relevant work, she went on to conduct step five findings.  The ALJ indicated that at the time Plaintiff alleged she became

disabled, she was considered an individual closely approaching advanced age, but at the time of the ALJ's decision, she was an individual of advanced age. Id. The ALJ further found Plaintiff had a high school education and was able to communicate effectively in English. Id. Considering Ms. Reed's age, education, work history, and RFC, the ALJ found Rules 202.15 and 202.07 of the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 directed a finding that Plaintiff was not disabled. Id. The ALJ also found, considering Plaintiff's age, education, work history, and RFC, there were jobs in the national economy in significant numbers that Plaintiff could perform. Id. Ultimately, the ALJ found Plaintiff was not disabled as defined in the Social Security Act at any time since December 14, 2001. Id.

On February 17, 2009, Ms. Reed filed an appeal in this Court. See docket no. 1. In Plaintiff's Motion to Reverse and Remand for a Rehearing, she alleges the administrative decision contains multiple errors. See docket no. 12. Specifically, Ms. Reed argues: (i) the ALJ failed to properly weigh the medical source opinions; (ii) the Appeals Council failed to consider new and material evidence; (iii) the ALJ relied upon flawed vocational expert testimony; and (iv) the ALJ failed to properly evaluate Ms. Reed's credibility. Id. at 14-24. On July 7, 2009, the Commissioner filed a response to Ms. Reed's motion, arguing the ALJ applied the correct legal standards and the decision is supported by substantial evidence. See docket no. 16.

**Analysis**

**A.    Medical Source Opinions**

Plaintiff first argues the ALJ failed to apply Tenth Circuit case law with respect to properly weighing medical source opinions. See docket no. 12 at 14-18. Plaintiff states "it is unclear how the consultative examiner's findings can be both consistent with the balance of the evidence, and at the same time contradict findings from Ms. Reed's treating sources, whose

records make up the balance of the evidence." Id. at 15.  Plaintiff additionally contends "it is well-settled that when the opinions of treating and consultative examining sources conflict without additional evidence to support the opinion of the consultative examiner, the scales tip in favor of the treating source."  Id.  Plaintiff raises particular concern with the ALJ's handling of the medical opinions of Dr. Jon Shrader and Dr. Joseph A. Rizzo.  See id. at 15-18.

Substantial evidence is more than a mere scintilla but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987).  Substantial evidence supports the ALJ's evaluation of the medical source opinions in this case.  The Commissioner will give controlling weight to a treating physician's opinion only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in Ms. Reed's case record.  See 20 C.F.R. § 404.1527(d)(2).  It is well-settled that the Court is precluded from re-weighing the evidence or substituting its own judgment for that of the Commissioner.  See Hamilton v. Sec'y of Health & Human Serv's, 961 F.2d 1495, 1500 (10th Cir. 1992).

**1.    Dr. Jon Shrader**

With respect to the opinion of Jon Shrader, M.D., the Court finds the ALJ properly weighed Dr. Shrader's opinions.  The Administrative Record contains three opinion-type statements from Dr. Shrader.  First, on January 2, 2002, Dr. Shrader signed a New Mexico Department of Labor form that allowed Ms. Reed to receive unemployment insurance benefits.  See AR at 25, 214.  On this form, Dr. Shrader stated that on December 14, 2001, he advised Plaintiff to leave her job as a janitor because of back pain.  See id.  Dr. Shrader, however, also indicated that Plaintiff was able to return to her previous work as a cashier and

warranty clerk on January 2, 2002, and that she had been laid off "due to lack of work."  See id. This form supports the ALJ's decision that Ms. Reed could return to her past relevant work as a warranty clerk and cashier, especially considering Plaintiff signed a statement agreeing with the form Dr. Shrader completed.  See id. at 27, 213.

Second, in January 2005, Dr. Shrader wrote a letter that states that because of back pain, Plaintiff required the use of a wheelchair or scooter in November 2002.  See id. at 25, 404-05. The ALJ afforded this letter little evidentiary weight because it represented a "very brief period of time" and was a clear diversion from Plaintiff's general condition in 2002 and thereafter.  See id. at 26.  For example, the ALJ noted that every treatment record in evidence indicated that Plaintiff could stoop, touch her toes, raise and flex her legs, and fully ambulate without a problem.  See id. at 26.  Plaintiff opposes the ALJ's reasoning, but she does not point to any other medical evidence showing that she ever required the use of a wheelchair or a scooter.

Third, on April 24, 2003, Dr. Shrader completed a "Medical Source Statement of Ability to Do Work-Related Activities (MSS)."  See AR at 193-94.  He stated that Plaintiff could occasionally lift less than 20 pounds, sit less than 2 hours in an 8-hour workday, and stand and walk less than 2 hours in an 8-hour workday.  See id.  Dr. Shrader did not complete the portions of the form asking for the medical basis for the above-listed limitations.  See id.  The ALJ afforded greater weight to the opinion of a consultative examiner, Anthony P. Reeve, M.D.,[2]

---

[2] The ALJ described the April 2003 report of Dr. Reeve, the consultative examiner.  See id. at 26, 183-87.  Dr. Reeve noted that Plaintiff drove a car, performed normal activities of daily living, and reported she could lift twenty pounds.  See id. at 26, 183.  In addition, Ms. Reed reported to Dr. Reeve that she worked 20 hours a week, and "the only reason that she [did] not work 40 hours per week [was] because there [was] no work available for her."  Id.  The ALJ noted that Dr. Reeve's examination findings were essentially unremarkable.  See id. at 26, 184-85).  For example, Dr. Reeve found Plaintiff's range of motion to be normal in all areas. See id. at 26, 184-87.  Dr. Reeve opined that Plaintiff could "easily" perform light to medium

than she did to Dr. Shrader's opinion.  See id. at 26, 183-87.  The ALJ concluded that Dr. Reeve's opinion that Ms. Reed could perform light to medium work was more consistent with what Plaintiff's other treating sources had stated and also with what Plaintiff herself admitted.  See id. at 26, 185.  For example, the ALJ referred to August 2001 examination results from R. D. Smith, M.D.  See id. at 25, 159-61.  Although Ms. Reed complained of neck and low back pain, Dr. Smith found no medical explanation for Plaintiff's symptoms.  See id. at 25, 160-61.  Plaintiff moved easily, and she could extend either foot or leg well above a 90-degree angle and touch her toes on the floor in forward flexion.  See id. at 25, 160.  Dr. Smith found that Plaintiff's ankle, knee, and hip movements "all carried out quite freely [with a] full range of motion" and straight-leg testing negative at 90 degrees.  See id.  Although Dr. Smith found tenderness over Ms. Reed's lower lumbar area and the sciatic notch on both sides, he also found full range of motion of both upper extremities, strong abductors and flexors in Plaintiff's shoulders, and full range of motion in Plaintiff's neck with no tenderness.  See id.

 Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.  Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007).  Plaintiff argues that it was unclear how Dr. Reeve's opinion could be more consistent with the rest of the record than Dr. Shrader's because Dr. Shrader's records made up the balance of the record.  See docket no. 12 at 15.  The Commissioner, however, described how Dr. Shrader's January 2002 statement on the New Mexico Department of Labor form that Plaintiff could return to work as a warranty clerk or cashier conflicted with his later, April 2003 assessment.  See id. at 193-94, 214.  In

---

work.  See id. at 26, 185.  The ALJ also concluded that the statements of Plaintiff's other treating sources and Ms. Reed's own statements were more consistent with Dr. Reeve's April 2003 opinion than with Dr. Shrader's opinion.  See id. at 26.

9

addition, the ALJ described how the file contains no evidence that supports Dr. Shrader's January 2005 letter about Plaintiff's use of a wheelchair or scooter in November 2002. See id. at 25, 404-05.  Further, Plaintiff's own statement to Dr. Reeve in April 2003 about her ability to work 40 hours conflicts with Dr. Shrader's April 2003 medical source statement. See id. at 183. Moreover, a review of Dr. Shrader's records show some complaints of back pain, but little in the way of objective medical tests to support her complaints or the significant restrictions that Dr. Shrader included in his April 2003 assessment.  See id. at 188–261, 401-02.  In fact, when Dr. Shrader had the opportunity to provide the medical basis to support the limitations in his assessment, he did not do so.  See id. at 193-94.  In marked contrast, as the ALJ described in her decision, Dr. Reeve provided detailed clinical findings to support his opinion, which was contrary to Dr. Shrader's opinion.[3]  See id. at 183-87.

Plaintiff does not offer any evidence to support her theory that she was in a "brief period of remission" at the time of Dr. Reeves's examination, and the record shows otherwise.  See docket no. 12 at 16.  Ms. Reed completed a work activity report in June 2003, in which she stated that she began work in September 2002 and she was still working.  See AR at 111. Plaintiff stated she earned $5.50 an hour and worked approximately 4 hours per day.  See id.

---

[3] Plaintiff also argues that the ALJ should have considered the possibility that Dr. Reeve placed "disparate impact" on Plaintiff's statement that she was working part-time and could possibly work full time.  See docket no. 12 at 16.  Ms. Reed cites an Eighth Circuit case to support her argument that a "brief period of remission" does not mean that a claimant's symptoms have gone away or that they do not exist.  See id. (citing Gude v. Sullivan, 956 F.2d 791, 783 (8th Cir. 1992)).  Dr. Reeve and Dr. Shrader, however, provided their opinions about Plaintiff's limitations in the same month – April 2003 (Tr. 183-87, 193-94).  See AR at 183-87, 193-94.  At that time, Ms. Reed was working 20 hours a week; she stated she could work 40 hours a week if she had a job; and; according to Dr. Reeve's thorough examination, she had essentially unremarkable findings with a normal range of motion in all areas.  See id. at 26, 184-87.

Ms. Reed's earnings record shows that she earned $4,297.47 in 2003. See id. at 297, 679. If she worked 20 hours per week at the rate of $5.50 per hour, Ms. Reed would have earned $110 per week. At the rate of $110 per week, she would have worked at least 39 weeks ($4,297 ÷ 110 = 39). The Court finds that Ms. Reed apparently worked at least 39 weeks in 2003, and that this conflicts with her claim of a "brief period of remission."[4]

Ms. Reed argues that Dr. Shrader's examinations repeatedly noted abnormal clinical findings of pain with range of motion and decreased deep tendon reflexes in the right lower extremity.[5] See docket no. 12 at 17 (citing AR at 196, 209, 319). The records to which Plaintiff refers, however, appear to show that in May 2002, Plaintiff complained of ear pain.[6] See AR at 208. Seven months later, in February 2003, Dr. Shrader's examination showed that Plaintiff had pain with range of motion, and he diagnosed low back pain and an upper respiratory infection. See id. at 196. Based on Ms. Reed's own statements, however, she was working 20 hours a week at that time.[7] See id. at 111.

---

[4] Plaintiff also contends that the ALJ erroneously concluded that Dr. Shrader's opinion was not "well supported" by the record. See docket no. 12 at 16 (citing AR at 26). Plaintiff claims, "[i]n fact, Dr. Shrader's opinion was supported by objective findings, not provided to the consultative examiner . . ." Docket no. 12 at 16. The objective findings to which she refers, however, included a magnetic resonance imaging scan ("MRI") of her lumbar spine (Tr. 571-72), an MRI of her thoracic spine (Tr. 573), and an MRI of her cervical spine (Tr. 597-98). See id. at 16 (citing AR at 571-72, 573, and 597-98). The Court notes the Agency could not possibly have provided these MRIs to Dr. Reeve, the consultative examiner, given that he examined Plaintiff in April 2003, and she did not undergo these tests until June 2007 and December 2007. See AR at 571-73, 597-98.

[5] The Court questions whether three episodes qualifies as "repeatedly."

[6] Dr. Shrader also noted that Ms. Reed had low back pain and pain in her right leg with range of motion and decreased deep tendon reflexes. See id. at 209.

[7] Additionally, in February 2004, Plaintiff saw Connie Lindsey, a physician's assistant who worked under the supervision of H. Kyle Sheets, M.D., with the Christi Medical Clinic of Clovis. See id. at 318-20. Ms. Reed complained about back pain, but she told Ms. Lindsey that

Ms. Reed also argues the ALJ's finding that Dr. Shrader's opinion was inconsistent with his own records and that the doctor did not indicate how long Plaintiff was so limited should have triggered the ALJ's duty to develop the record. See docket no. 12 at 17.  Plaintiff claims the ALJ should have determined whether the statement was confined to a narrow period of time.  See id.  The Court finds, however, that the ALJ had Dr. Shrader's records, and therefore could determine whether these records were inconsistent with Dr. Shrader's April 2003 opinion. See id. at 193-94.  The ALJ's reference to a brief period of time concerns Dr. Shrader's January 2005 statement, in which he said that because of back pain, Plaintiff required the use of a wheelchair or scooter in November 2002.  See id. at 25, 404-05.  As stated above though, the file contains nothing to show that Ms. Reed was ever confined to a wheelchair or scooter.  The Court finds the ALJ properly gave more weight to Dr. Reeve's opinion than he gave to Dr. Shrader's opinion because Dr. Reeve's opinion was more consistent with the balance of the evidence and because Dr. Shrader's opinion contradicted Dr. Reeve's specific findings, findings of other treating sources, and what Ms. Reed herself admitted.

**2.     Dr. Joseph Rizzo**

As stated above, the Commissioner will give controlling weight to a treating physician's opinion only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  See 20 C.F.R. § 404.1527(d)(2).  The Court finds the ALJ properly weighed Dr. Rizzo's August 24, 2004 opinion.  See AR at 26, 346-50.  At that time, Dr. Rizzo completed a "Cardiac Impairment Questionnaire," in which he diagnosed obstructive coronary artery disease

---

it was "an acute episode with no prior history of back pain." Id. at 318.

and mitral valve prolapse.  See id. at 346.  Dr. Rizzo described Ms. Reed's prognosis as "Good."  See id..  Dr. Rizzo stated that Plaintiff's primary symptoms were chest pain, fatigue, and palpitations, and when he responded to the question about whether Plaintiff's symptoms would "likely increase if [she] were placed in a competitive work environment," he answered "No."  Id. at 347, 348.  The doctor opined that in an 8-hour-workday, Ms. Reed could sit 8 hours, stand 4 hours, could frequently lift or carry up to 5 pounds, and could occasionally lift or carry up to 10 pounds.  See id. at 348-49.  Dr. Rizzo opined that Ms. Reed's impairments were not likely to produce "good days" and "bad days" and that Plaintiff's symptoms would "seldom" be severe enough to interfere with attention and concentration and that she was capable of tolerating moderate work stress.  Id. at 349.

The Court finds the ALJ gave Dr. Rizzo's opinion about Plaintiff's weight restrictions only limited evidentiary weight because she found that these restrictions were inconsistent with Dr. Rizzo's own treatment records.  See id. at 26, 348-49.  The ALJ also reasoned that Dr. Rizzo's opinion did not suggest that Ms. Reed was unable to sustain work on a regular and continuing basis.  See id. at 26.  Plaintiff argues the ALJ should have re-contacted Dr. Rizzo if she believed the doctor's opinion was incomplete, however, the ALJ did not determine that Dr. Rizzo's opinion was incomplete, but instead found that the restrictions in the assessment form were inconsistent with Dr. Rizzo's own treatment records.  See id. at 26, 348-49.  The Tenth Circuit has held that re-contact with the physician is not required if the information received from the physician is "adequate" for consideration – that is, it is not so incomplete that it cannot be considered.  See White v. Barnhart, 287 F.3d 903, 908-09 (10th Cir. 2002).

Plaintiff also contends the ALJ, as a layman, was not qualified to determine whether cardiac testing substantiated Dr. Rizzo's opinion "without any medical evidence or authority to

support a contrary conclusion." See docket no. 12 at 17-18.  The ALJ, however, provided specific references to the medical evidence to support her findings concerning Dr. Rizzo's opinion.  See id. at 26.  The ALJ, for example, indicated that while Dr. Rizzo noted in the 2004 questionnaire that Ms. Reed suffered from mitral valve prolapse, Dr. Rizzo's own objective testing showed only a "slightly thickened mitral valve with mild mitral valve prolapse and trace mitral insufficiency" and an "otherwise normal study."  See id. at 26, 346, 357, and 422.  Additionally, the ALJ observed that a doppler evaluation proved essentially normal.  See id. at 26, 420.  After a left heart catheterization, coronary arteriography, and left ventriculography in December 2006, Dr. Rizzo termed Plaintiff's disease as "minimal nonobstructive coronary artery disease" and stated there was "satisfactory left ventricular function."  See id. at 26, 444-45.  Accordingly, contrary to Ms. Reed's argument, the ALJ described the medical evidence that was contrary to Dr. Rizzo's opinion.[8]

As such, the Court finds Plaintiff's first claim fails.

**B.    New and Material Evidence**

Plaintiff's next argument relates to a report and questionaire from an orthopedic specialist, Dr. Claude Gelinas.  See docket no. 12 at 18-20.  Ms. Reed asserts the Appeals Council "merely found that the opinion submitted [by Dr. Gelinas] with the request for review did 'not provide a basis for changing the Administrative Law Judge's opinion.'"  Id. at 19.

---

[8] Plaintiff acknowledges that the report of Dr. Reeve, the consultative examiner, supported the ALJ's RFC determination.  Ms. Reed, however, again claims that Dr. Reeve's opinions about Plaintiff's limitations were questionable because Dr. Reeve based his opinions upon unknown medical records.  See docket no. 12 at 18.  The Court finds this claim to be unfounded and notes that Dr. Reeve based his opinion on his objective findings during his consultative examination.  See AR at 183-87.  Moreover, the Commissioner has discussed Plaintiff's characterization of Dr. Reeve's report above, and has explained how the Agency could not have provided the MRIs that Plaintiff underwent in June 2007 through December 2007 to Dr. Reeve, because he examined her in April 2003.  See id. at 571-73, 597-98.

Plaintiff acknowledges the Dr. Gelinas' report was issued after the ALJ's determination, but claims it relates to complaints and functional limitations that pre-date the ALJ decision.  See id.

The Appeals Council had no obligation to recontact Dr. Gelinas about his report in this case as Dr. Gelinas examined Plaintiff on July 9, 2007 – approximately 2 ½ months after the ALJ issued her decision.  See AR at 562-70.  Nevertheless, though Plaintiff states the Appeals Council "merely found that the opinion submitted with the request for review did 'not provide a basis for changing the . . . [ALJ's] decision," the Appeals Council also indicated that in making its decision, it had "considered the reasons [Plaintiff disagreed] with the [ALJ's] decision *and the additional evidence listed on the enclosed Order of Appeals Council*."  See id. at 8 (emphasis added).  The Appeals Council listed Dr. Gelinas' records as one of the exhibits it considered, and the Appeals Council had no obligation to provide a more detailed analysis of its reasoning with respect to Dr. Gelinas' records and opinions.  See Hackett v. Barnhart, 395 F.3d 1168, 1172-73 (10th Cir. 2005).  Therefore, the Court finds Plaintiff's second claim also fails.

## C.     Vocational Expert Testimony

Next, Plaintiff asserts the ALJ relied upon flawed vocational expert testimony.  See docket no. 12 at 20-22.  Specifically, Plaintiff claims "[t]he ALJ erroneously found that although Ms. Reed could not stand/walk more than 4 hours, [her] RFC remained at the 'light' level of exertion because she could perform the lifting/carrying requirements at that level."  Id. at 20.  Plaintiff states that in order to fit into a particular work category (sedentary, light, medium, etc.), the claimant must be able to do "substantially all (nearly all)" the requirements of strength demands at a particular RFC to be able to perform that type of work.  Id. at 20-21.  According to Ms. Reed, finding that she could perform light work "when she cannot stand/walk more than 4 hours," especially considering "the fact that this requirement is the 'primary difference' between

sedentary and light jobs," makes the ALJ's decision inconsistent with the requirement that Ms. Reed must be able to perform nearly all the strength demands of light work. Id. at 21. As such, Plaintiff contends the ALJ should have found her to be disabled within the framework of Medical-Vocational Guideline Rule 201.14. See id. at 21-22.

The Medical-Vocational Guidelines apply only if the claimant cannot perform her past relevant work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). In this case, based on the testimony of a vocational expert, the ALJ determined at step four of the sequential evaluation process that Plaintiff could perform her past relevant work as a warranty clerk and cashier. See AR at 27, 707. Although the ALJ did proceed to step five of the sequential evaluation process, she did not have an obligation to do so because if the ALJ can find that a claimant is disabled or not disabled at any step, then she does not need to proceed to the next step. See 20 C.F.R. § 404.1520(1)(4). As such, the ALJ's step four decision by itself provided sufficient support for her decision that Plaintiff was not disabled. See AR at 27. Therefore, the Court finds Plaintiff's third claim fails.

**D.      ALJ's Evaluation of Plaintiff's Credibility**

Finally, Plaintiff argues the ALJ failed to properly evaluate Ms. Reed's credibility. See docket no. 12 at 22-24. Plaintiff cites, as evidence the ALJ failed to properly assess Ms. Reed's credibility, the ALJ's findings that "the objective medical evidence . . . does not support a medically determinable impairment that would explain chronic neck pain;" "the pain of which [Plaintiff] complains has not prevented at least a decade of substantial gainful activity at a high level of performance;" "[Plaintiff] testified she frequently feels fatigued, yet she continues to smoke a pack of cigarettes a day;" and "[Plaintiff] testified that the side effects of her medications make her tired and sleepy, yet, at another point in her testimony, she said that

16

despite taking Ambien, a well-known and reputedly very effective sleep aid, she cannot sleep."

See docket no. 12 at 22-23 (citing AR at 27). Plaintiff also cites the ALJ's finding that Ms. Reed:

> testified that her chronic back pain is the primary reason she is unable to work, but her medical records indicate generally she has not experienced any acute distress, and I observed her sitting through a lengthy hearing without the slightest indication of physical discomfort. According to [Ms. Reed], she fractured her back in 1993 and has experienced severe back pain ever since. Yet, notably, this back pain did not preclude performance of significant skilled work for many years and was not, according to [Ms. Reed's] medical records, worse at the time she stopped working. In fact, [Plaintiff's] medical records show no worsening of symptoms . . . since the date she told the state agency's consultative physician (Dr. Reeve), who examined her in 2003, that she felt capable of full time work.

See id.

Credibility determinations are particularly within the province of the ALJ who considered the claimant's testimony at the hearing and compared it to the record. See Qualls v. Apfel, 206 F.3d 1368, 1372-73 (10th Cir. 2000). The Court is not permitted to substitute its own judgment for that of the ALJ's. See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). As the Tenth Circuit has held:

> The ALJ enjoys an institutional advantage in making credibility determinations. Not only does an ALJ see far more Social Security cases than do appellate judges, the ALJ is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference.

White, 287 F.3d at 910.

The ALJ properly determined that Ms. Reed's subjective complaints were only partially credible. When assessing credibility, the ALJ can look at objective indicators of pain, such as

17

attempts to find relief, use of medications, including dosage, effectiveness, and side effects of such medication, willingness to try any treatment prescribed, and the claimant's daily activities. See Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).  As stated above, the Tenth Circuit has noted that an ALJ is uniquely able to observe the demeanor and gauge the physical abilities of a claimant in a direct and unmediated fashion, and therefore her credibility findings warrant particular defense.  See White, 287 F.3d at 910.  In this case, the ALJ appropriately weighed the evidence and stated the appropriate factors upon which she relied in determining Plaintiff's credibility.  See AR at 27.  The Court finds substantial evidence supports the ALJ's credibility determination, and as such, finds that Ms. Reed's final claim also fails.

**E.  Summary**

The Court cannot conclude that the ALJ erred in determining Ms. Reed could perform a limited range of light work activity after recognizing that she did have severe impairments that resulted in various limitations.  The ALJ's handling of the case is supported by substantial evidence and the ALJ's decision comports with relevant legal standards.  Even if the ALJ did not discuss all the evidence to Plaintiff's satisfaction, she was not required to discuss every piece of evidence in the record, and her decision reflects consideration of both the objective and subjective evidence she relied upon and the probative evidence she rejected.  See Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Because the ALJ's determination is supported by more than a scintilla of evidence and was reached through applying proper legal standards, her findings are conclusive.  The undersigned is not permitted to re-weigh the evidence or substitute its own judgment for the ALJ's.  See Glass, 43 F.3d at 1395; Casias, 933 F.2d 799, 800 (10th Cir. 1991).

### Recommendation

For the reasons set forth above, it is hereby recommended that Ms. Reed's Motion to Reverse and Remand (docket no. 12) be denied.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE