**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANNA REED,

        Plaintiff,

v.                                                     CIV No. 09-0159 BB/CEG

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand, with Supporting Memorandum ("Motion") (Doc. 12), filed in this case on June 10, 2009. The Honorable Bruce D. Black, United States District Judge, referred the claims raised in the Motion to the undersigned for proposed findings and a recommended disposition. (Order of Reference, Doc. 15.) The Court issued its Proposed Findings and Recommended Disposition (PF&RD) on October 15, 2009. (Doc. 17.) On October 27, 2009, Plaintiff filed objections to the PF&RD ("Plaintiff's Objections") (Doc. 18), and on November 23, 2009, Judge Black referred the case to the undersigned to review the PF&RD in light of Plaintiff's objections (Doc. 19). The Court has reviewed Plaintiff's Motion (Doc. 12), Defendant's Response to Plaintiff's Motion to Reverse or Remand with Supporting Memorandum ("Response") (Doc. 16), Plaintiff's Objections (Doc. 18), and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record ("Record" or "R."). Because a key finding in the Commissioner's decision is not supported by substantial evidence, the Court recommends that Plaintiff's

Motion be granted and that this case be remanded to the Commissioner for further proceedings consistent with this PF&RD.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir.

2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### **Applicable Law and Sequential Evaluation Process**

In order to claim benefits as a disabled widow, a claimant must be the surviving spouse of a deceased worker, must have attained the age of 50, must be unmarried (unless an exception applies), and must establish a disability that began before the end of the period prescribed by the Social Security Act. *See* 20 C.F.R. § 404.335; (R. at 21). The period prescribed by the Social Security Act ends (a) in the month before the month in which the claimant attains age 60, or if earlier, either (b) seven years after the worker's death or (c) seven years after the widow was last entitled to survivor's benefits. *See* 20 C.F.R. § 404.335.

A person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity;" and (2) she has a "severe medically determinable . . . impairment . . . or

a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Background

Ms. Reed was born on July 13, 1949 (Motion, Doc. 12 at 3; *see* R. at 20). She has a General Education Development (GED) credential. (R. at 678.) Since 1986, Ms. Reed has had experience working as a janitor, a cashier/warranty clerk, a bus driver, and a cook/server. (R. at 80.)

On August 2, 2002, Ms. Reed applied for disabled widow's benefits (DWB) and for a period of disability and disability insurance benefits (DIB), alleging a disability-onset date of December 14, 2001. (R. at 55-57 (DWB); R. at 20 (DIB).) Her application was denied initially (R. at 40-42) and upon reconsideration (R. at 46-48). Ms. Reed requested a hearing, which took place before Administrative Law Judge (ALJ) Larry Johnson. (R. at 49 (request); R. at 659-73 (hearing transcript).) ALJ Johnson issued a partially favorable decision, awarding benefits beginning from July 13, 2004, Ms. Reed's 55th birthday.[2] (R.

---

[1] 20 C.F.R. § 404, subpt. P, app. 1.

[2] Prior to her 55th birthday, the Grid Rules directed a finding of "not disabled" under the circumstances found by ALJ Johnson, whereas after her 55th birthday, the Grid Rules directed a finding of
(continued...)

at 364-72.) Ms. Reed requested review by the Appeals Council, asserting a new onset date of August 1, 2003. (R. at 378-79.) The Appeals Council granted review, vacated the ALJ's decision, and ordered a new hearing *inter alia* to obtain additional evidence regarding Ms. Reed's impairments, further evaluate her subjective complaints, further consider her maximum Residual Functional Capacity (RFC), and obtain evidence from a Vocational Expert (VE). (R. at 385-90.)

The second hearing was held on January 31, 2007 before ALJ Joanne S. Birge in Roswell, New Mexico. (R. at 675-725.) At the hearing, Ms. Reed testified and was represented by attorney Renato Bringas (*id.*), and VE Cornelius Ford testified (R. at 706–723). ALJ Birge issued her unfavorable decision on April 25, 2007, concluding that Ms. Reed was not disabled at any relevant time. (R. at 28.)

The ALJ found that Plaintiff's deceased spouse had been an insured worker who met the insured status requirements of the Social Security Act through the date of the ALJ's decision.[3] (R. at 23.) The ALJ additionally found that Plaintiff's earnings record established that she met the insured status requirements of the Social Security Act through the date of the ALJ's decision. *Id.* Ultimately, however, ALJ Birge found that Plaintiff was not disabled at step four of the five-step sequential evaluation process. (R. at 27.)

---

[2](...continued)
"disabled." (R. at 371.) Although this nuance provides some clarity of the posture of the case, it is not at issue.

[3] The ALJ noted that in this case, Ms. Reed's prescribed period began July 2, 2002 – "the date the wage earner died" and therefore, in order to be entitled to a disabled widow's benefits, Plaintiff must establish disability beginning on or before July 31, 2009. (*See* R at 21.)

At step one, the ALJ found that Ms. Reed had not been engaged in substantial gainful activity since December 14, 2001.[4]  (R. at 23.)  The ALJ, therefore, proceeded to the next step.

At step two, the ALJ found that Ms. Reed had several severe, medically determinable impairments: (1) degenerative disc disease with stenosis and chronic back and neck pain; (2) very mild non-obstructive coronary artery disease; (3) asthma; and (4) mild chronic obstructive pulmonary disease secondary to smoking.  *Id.*  Because the ALJ found that Ms. Reed had at least one severe, medically determinable impairment, she proceeded to the next step.

At the third step, the ALJ found that none of the step-two impairments, alone or in combination, met or medically equaled any of the Listings found in 20 C.F.R. § 404, subpt. P, app. 1.  (R. at 25.)  If any Listing had been met, the ALJ would have found Ms. Reed disabled at this step.  (R. at 22.)  Since the ALJ did not find that any Listing was met or that Ms. Reed was disabled at this step, she proceeded in the sequential evauation process.

Before step four, the ALJ determined Ms. Reed's RFC.  She found that Ms. Reed was capable of performing a "limited range of light work."  (R. at 25.)  The ALJ did not find the full range of light work[5] because of Ms. Reed's limitations in lifting and carrying, standing and walking, working overhead, and tolerating environmental pollutants.

> [Ms. Reed] is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk [for] four hours of an eight-hour workday, and sit without restriction, but she is able

---

[4] The disability onset date alleged in the initial application.  (R. at 56.)

[5] *See* 20 C.F.R. § 404.1567 (defining "light work").

6

>to work overhead only occasionally, and she needs to avoid concentrated exposure to smoke, gas, fumes, and other environmental pollutants.

*Id.*

At step four, the ALJ found that Ms. Reed had the RFC to return to her past work as a warranty clerk and cashier. (R. at 27.) Because the ALJ found that Ms. Reed could return to her past work and was not disabled at this step, the sequential evaluation process was technically satisfied. The ALJ, however, proceeded to step five anyway.

At the fifth and final step, considering Ms. Reed's age, education, work history, and RFC, the ALJ utilized the Grid Rules,[6] which directed a finding of not disabled. (R. at 28.) The ALJ also found that there were jobs in the national economy in significant numbers that Plaintiff could perform, but she did not list them. *Id.* The ALJ, therefore, found that Plaintiff was not disabled as defined in the Social Security Act at any time since December 14, 2001. *Id.*

On May 25, 2007, Ms. Reed requested review by the Appeals Council (R. at 15–16), which was denied on December 17, 2008 (R. at 8). ALJ Birge's decision, therefore, is the final decision of the Commissioner, and Ms. Reed's claim is ripe before this Court. (*See* Docs. 1, 12.)

### Medical Evidence

The record contains medical and chiropractic treatment notes from various providers as well as results from medical tests and evaluations.[7] Ms. Reed's primary care was

---

[6] *See* 20 C.F.R. § 404, subpt. P, app. 2, §§ 202.15, 201.07.

[7] Some of the medical records contained in the administrative record were not considered by the ALJ because they were developed after her decision. The Court outlines only those medical records dated prior
(continued...)

provided by Covenant Family Health Care Center in Clovis, New Mexico, where she saw Dr. Shrader, her treating physician, or one of his colleagues about 48 times[8] starting in January 1998. (R. at 134–55, 188–261, 318–345.) The notes from nearly every visit show complaints and/or treatment related to heart or breathing problems or back pain.[9] *Id.*

Upon Ms. Reed's complaints of back and neck pain, Dr. Shrader ordered a radiograph of the cervical spine, which was taken in January 2001 and showed mild degenerative disc disease. (R. at 232.) He also ordered a radiograph of the neck, and the report indicated that it was ordered to explore a "foreign body stuck in throat," which was neither evident nor excluded because the exam's sensitivity was limited by thyroid calcifications in the glottis region. (R. at 230.) At the same time, to explore Ms. Reed's vertigo, Dr. Shrader also ordered an MRI of the brain, which was normal other than rhinitis and "minimal scattered ethmoid sinusitis" (R. at 233.), and he ordered an magnetic resonance angiogram (MRA), which showed "mild plaque disease bilaterally in carotid vessels and in the internal carotid arteries proximally [and] narrowing . . . in the 10-30% range." (R. at 231.) In October 2002, Dr. Shrader ordered radiographs of Ms. Reed's hips, which were normal. (R. at 203.) Two years later, in October of 2004, he also ordered an MRI of the lumbar spine, which showed problems. (R. at 510.)

> At L5-S1, there is facet joint degenerative changes, disc bulges, posterior osteophyte, and ligamentum flavum hypertrophy. This contribute[s] to moderate bilateral

---

[7](...continued)
to the ALJ's decision.

[8] She saw Dr. Shrader himself about 28 times beginning in October 1999. (R. at 193–96, 198–200, 202–04, 207–09, 211–14, 218–23, 229–33, 235, 241, 245–49, 253, 256–57, 261, 323–32, 336, 342–44, 405.)

[9] These are the three areas in which the ALJ found Ms. Reed to have severe impairments. (R. at 23.)

>  subarticular recess stenosis, and minimal bilateral neural foramina stenosis.  Impressions: 1.  Old significant compression fracture at level T12.  No acute fracture is seen. 2.  Degenerative disc disease at level L5-S1, contributing to subarticular recess and foramina stenosis.

*Id.*

Upon referral by Dr. Shrader, Ms. Reed began treatment for cardiac issues at Cardiologists of Lubbock, P.A., where she was usually seen by Joseph Rizzo, M.D. (R. at 274–79, 346–53, 407–08, 419–21, 429, 436, 444–47, 626.) The record contains treatment notes from about 13 visits beginning in June of 2003.  *Id.*  At the initial appointment, Dr. Rizzo ordered a stress test and echocardiogram, prescribed daily baby asprin and Cardizem CD, and recommended further evaluation. (R. at 278–79.) The thallium stress test showed "abnormal myocardial perfusion with mild lateral ischemia" and prompted Dr. Rizzo to order a coronary angiography and a cardiac catheterization. (R. at 276–77.) In July 2003, the catheterization showed "very mild obstructive coronary artery disease [and] left ventricular hypertrophy with satisfactory left ventricular function." (R. at 274–75.) In August 2003, Ms. Reed saw Dr. Rizzo again, and he continued the Cardizem. (R. at 353.)  In February 2004, Dr. Rizzo noted Ms. Reed's complaints of fatigue, and he encouraged her to quit smoking. (R. at 352.) In August 2004, Ms. Reed followed up with Dr. Rizzo, who diagnosed her with mild coronary artery disease and noted arthritis in hips and shoulders; he continued her medications and asked her to follow-up in one year. (R. at 351.) Later that month, Dr. Rizzo completed a "Cardiac Impairment Questionnaire," on which he recorded her diagnoses of mild obstructive corornary artery disease and mitral valve prolapse. (R. at 346–50.) He supported these diagnoses by reference to Ms. Reed's chest pain and palpitations, the results of her echocardiogram in June 2003, the abnormal

9

results of her thallium stress test in June 2003, and her cardiac catheterization in July 2003. *Id.* He noted that her primary symptoms were chest pain, fatigue, and palpitations, which he concluded were "reasonably consistent with" her impairments. (R. at 347.) He limited her capacity as follows: no sitting restriction, standing/walking 4 of 8 hours, lifting/carrying 5 pounds or less frequently, lifting/carrying 5–10 pounds occasionally, and never carrying more than 10 pounds. (R. at 348–49.) He also noted that "from a cardiac standpoint, [Ms. Reed] can handle moderate stress." (R. at 349.)

The record also contains treatment notes from two visits with Dr. Nicholas J. Rowley, an otolarynologist (R. at 157–58), and two visits with Dr. Gary Smith, a pulmonologist (R. at 283–84). One-time evaluations or visits with Dr. Ogunro, a neurologist (R. at 156), and Dr. R. D. Smith, whose speciality is unclear (R. at 159–61), are also present.

Lastly, there are three evaluations from agency physicians. (R. at 183–87, 307–14, 293--306.) Anthony P. Reeve, M.D., examined Ms. Reed and wrote an evaluation on April 8, 2003. (R. at 183–87.) Dr. Reeve had none of Ms. Reed's medical records available for his review. (R. at 183.) He stated that she could lift up to 20 pounds was capable of light to medium work. (R. at 183, 185.) He took special care to note that Ms. Reed told him that "the only reason that she does not work 40 hours per week is because there is no work available for her. . . . [She] states that she could do these duties, if in fact they had the work for her." (R. at 183.)

On July 25, 2003, Michael P. Finnegan, M.D., completed a Physical RFC Assessment form. (R. at 307–14.) Neither the ALJ's decision nor any of the pleadings refers to this report, and none explains the omission. Although it appears that Dr. Finnegan did not examine Ms. Reed and only prepared his report based on a review of her medical

records, the report is not entirely clear. *Id.* Dr. Finnegan opined that Ms. Reed was capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently. (R. 308.) He found that she could stand/walk and sit for 6 hours of an 8-hour workday, with no other restrictions besides "avoiding concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, etc." (R. 308–11.) Finally, the record includes a similar report from a non-examining doctor, who evaluated Ms. Reed's mental health restrictions. (R. at 293--306.) The report reflected that Ms. Reed has a history of anxiety and that her consequent limitations were mild. (R. at 303.)

## Analysis

Ms. Reed contends that the ALJ's decision is not supported by substantial evidence and is the result of legal error. (Motion, Doc. 12 at 1.) Specifically, she asserts that the ALJ erred in weighing the medical source opinions (Id. at 14-18). The Commissioner argues that the decision of the ALJ should be affirmed because she applied the correct legal standards and because the decision is supported by substantial evidence. (Response, Doc. 16 at 3, 5.) Because the Court recommends remand on this issue, it is not necessary to address the other errors asserted by Ms. Reed. For the reasons below, the Court recommends that the Commissioner's final decision be vacated and the case remanded for additional proceedings consistent with this PF&RD.

Social Security regulations require that, in determining disability, the opinions of treating sources—who are often physicians—be given controlling weight when those opinions are supported by the medical evidence and are consistent with the record; this is known as the "treating physician rule." 20 C.F.R. § 404.1527(d)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a

"unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations" and, therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

Since the opinions of treating sources presumptively carry more weight than those of non-treating sources, it is important to distinguish between the two. A "treating" source is a health care provider with certain minimum credentials, who provides "treatment or evaluation *and has an ongoing treatment relationship* with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902 (emphasis added). A "nontreating" source, on the other hand, is a health care provider with certain minimum credentials, who does *not* have an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902 (emphasis added). "[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *Doyal*, 331 F.3d at 763.

Treating source opinions—in order to receive controlling weight—must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit *controlling weight* but still receive *deference* and must be weighted using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to

> the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(d). Not every factor is applicable in every case, however, and all six factors should not be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 404.1527(d)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps. First, the ALJ must find that the opinion (A) is not supported by medical evidence and/or (B) is not consistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.

Here, Ms. Reed argues that the ALJ improperly rejected her treating physician, Dr. Shrader's, opinion in favor of a consultative opinion because "it is unclear how the consultative examiner's findings can be both consistent with the balance of the evidence, and at the same time contradict findings from Ms. Reed's treating sources, whose records make up the balance of the evidence" (Petition, Doc. 12 at 15). As further support, she argues that the Commissioner's own regulations and the case law dictate that treating physicians' opinions are entitled to more weight when there is no additional evidence to support the opinion of the consultative examiner (Id.), and she argues that the consultative examiner did not have the benefit of any of her medical records and his opinion, therefore,

13

"lacks credibility" (Id. at 16). Essentially, she challenges the ALJ's finding that Dr. Shrader's opinion was inconsistent with the record and argues that even if it were, under the circumstances in this case, the regulations still prescribe greater weight for Dr. Shrader's opinion than Dr. Reeve's.

The Commissioner contends that the ALJ properly weighed all the medical opinions.[10] (Response, Doc. 16 at 5). The ALJ explained that she gave greater weight to the consultative examiner, Dr. Reeve's opinion than to Dr. Shrader's because, essentially, Dr. Reeve's opinion was consistent with the evidence while Dr. Shrader's opinion contradicted it. (AR 26.)

> After his examination, Dr. Reeve found the claimant within normal limits in nearly every regard and opined the claimant was "easily" capable of light to medium work [AR 183-87]. Although in the same month, Dr. J. Shrader opined the claimant could *not* lift twenty pounds and could only sit, stand, and walk less than two hours of an eight-hour work day [AR 193]. I afford greater weight to Dr. Reeve's opinion because it is far more consistent with the balance of the evidence. Dr. Shrader's statement not only contradicts Dr. Reeve's specific findings (without opposing findings indicated), but also contradicts what other of the claimant's treating sources have stated and what the claimant herself has admitted.

*Id.* (emphasis in original).

---

[10] To support his position, the Commissioner cites to reasons provided by the ALJ, expands on those reasons, and gives new reasons that were not provided by the ALJ. (Response, Doc. 16 at 5–13.) Reviewing courts, however, may only evaluate an ALJ's decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)). It would be improper for a reviewing court to "supply[] possible reasons" for an ALJ's decision after the fact. *Id.* A court may not make a "post hoc effort to salvage [an] ALJ's decision" because such an effort would thrust the court beyond its proper role of judicial review and into the exclusive domain of the administrative agency as defined by Congress. *Id.* at 1084-85 (quoting *Allen v. Barnhart*, 357 F. 3d 1140, 1142 (10th Cir. 2004)). This Court, therefore, may only consider the reasons provided by the ALJ herself and must disregard any post hoc support offered by the Commissioner.

14

The Court finds that the ALJ erred at both steps of the treating-physician-opinion analysis. First, substantial evidence does not support the ALJ's reasons for finding that Dr. Shrader's opinion was inconsistent with the record and therefore did not merit controlling weight. Second, even if her reasons at the first step had been supported by substantial evidence, she did not move on to the second step. She failed to indicate what weight she ultimately did assign to Dr. Shrader's opinion and failed to explain that weight according to the six factors.

The ALJ did not find that Dr. Shrader's opinion[11] lacked support by medical evidence, but she did seem to find that it was inconsistent with the record because it was contradicted by the opinions of Dr. Reeve and other treating physicians and by Ms. Reed's own admission. The ALJ also found that Dr. Reeve's opinion was more consistent with the record. These reasons, however, are not supported by substantial evidence.

The ALJ pointed out that Dr. Shrader's opinion contradicted Dr. Reeve's opinion and lacked "opposing findings." She did not elaborate on what "opposing findings" were lacking. Like the Commissioner deduced (Resp., Doc. 16 at 6), the Court also gathered that the ALJ considered Dr. Shrader's RFC to lack findings because it contained only his conclusions. While Dr. Reeve included both his RFC conclusions and the medical evidence to support those conclusions in one evaluation form, Dr. Shrader's RFC contained only his conclusions, leaving the medical support for his conclusions in the treatment records. That is, it appears that the ALJ equated Dr. Shrader's failure to copy the support from the treatment records onto the RFC form itself with failing to provide support at all.

---

[11] The ALJ was not always clear about which of Dr. Shrader's opinions she was referring to, and there are records from more than seven years of treatment. Nevertheless, the Court addresses her rejection of Dr. Shrader's RFC because the RFC was crucial in the final disability determination.

15

The record, however, reflects diagnoses, treatment, and medical test results that support Dr. Shrader's RFC conclusions. (*See* R. at 232 (MRI showing mild degenerative disc disease), 233 (MRI showing rhinitis and sinusitis), 231 (MRA showing bilateral plaque disease), 510 (MRI showing back problems), 134–55, 188–261, 318–345.) Dr. Shrader was aware of Ms. Reed's treatment history and various testing results when he evaluated her RFC; he was familiar with the medical evidence that supported his conclusions. Likewise, the ALJ had Dr. Shrader's treatment records, and she therefore had the medical evidence that supported his conclusions.

The ALJ did not say that Dr. Shrader's treatment records contradicted or did not support his RFC. Rather, she stated that Dr. Shrader's RFC conclusions contradicted Dr. Reeve's RFC and did so without any support. The ALJ seemed to discount Dr. Shrader's RFC because it contradicted Dr. Reeve's and because the supporting evidence was not copied onto the form. The fact that the two RFCs are not consistent with each other is not in itself a proper reason to discount the Dr. Shrader's RFC. *See* 20 C.F.R. § 404.1527(d) (outlining the treating physician rule). Furthermore, it is inconsistent with the record to assert that Dr. Shrader's RFC is not supported because there are various notes and results that support Dr. Shrader's RFC. Lastly, the ALJ did not identify any treatment evidence—other than Dr. Reeve's evaluation—that contradicted Dr. Shrader's RFC. The Court, to be sure, is not attempting to re-weigh the evidence; instead, the Court is highlighting that, considering the presence of treatment records from Dr. Shrader that support his RFC, and the lack of any identified contradictory evidence, the ALJ's reasons for rejecting Dr. Shrader's RFC are not supported by substantial evidence.

The ALJ further explains her decision to reject Dr. Shrader's RFC by claiming that it contradicts "what other of the claimant's treating sources have stated." (AR 26.) The ALJ does not clearly indicate to which treating sources she referred, nor does she specify which statements by other treating sources are contradictory to Dr. Shrader's RFC. The Commissioner understands the ALJ to refer to R. D. Smith, M.D., as a treating source with statements that contradict Dr. Shrader's RFC. (Resp., Doc. 16 at 6–7.) Dr. R. D. Smith, however, is not a treating source because Dr. R. D. Smith examined Ms. Reed only one time. Dr. R. D. Smith's relationship with her, therefore, is not ongoing, and Dr. R. D. Smith cannot be regarded as a treating source. The only other treating source cited by the ALJ is Joseph Rizzo, M.D., Ms. Reed's cardiologist. (AR 26.) Although Dr. Rizzo's and Dr. Shrader's RFCs differ, the ALJ did not explain how those inconsistencies undercut Dr. Shrader's RFC, considering that Dr. Rizzo's conclusions were based only on his cardiac treatment (*see* R. at 346 ("Cardiac Impairment Questionnaire")) and Dr. Shrader's came from a global treatment perspective (*see* R. at 193 ("Medical Source Statement of Ability to do Work-Related Activities")). The Court does not find evidence of record to support the ALJ's reasoning that Dr. Shrader's RFC contradicts the statements of other treating sources.

As the final piece of support for claiming that Dr. Shrader's RFC was inconsistent with the record, the ALJ referred to Dr. Reeve's account of Ms. Reed's claim that she could work 40 hours per week if it were available. Considering that none of the ALJ's other reasons for rejecting Dr. Shrader's RFC is supported by substantial evidence and considering that Ms. Reed herself has no known expertise in the medical or vocational fields, her statement, by itself, is not substantial evidence to conclude that Dr. Shrader's

17

opinion is inconsistent with the record. The reasons provided by the ALJ in finding that Dr. Shrader's RFC was contradicted by the record are not themselves supported by substantial evidence. Finally, even if the reasons had been supported by substantial evidence, the ALJ still erred in rejecting Dr. Shrader's RFC because she did not indicate, according to the six factors, what weight she ultimately assigned it.

## Conclusion

For the reasons stated above, the Court **FINDS** that the ALJ's reasons for rejecting Dr. Shrader's RFC are not supported by substantial evidence. Accordingly,

**IT IS HEREBY RECOMMENDED** that Ms. Reed's Motion to Reverse and Remand, with Supporting Memorandum ("Motion") (Doc. 12) be granted and that this case be remanded to the Commissioner for further proceedings consistent with this PF&RD.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
**THE HONORABLE CARMEN E. GARZA**
**UNITED STATES MAGISTRATE JUDGE**